IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CYNTHIA JAFARY
                    Plaintiff,

v.                                          CIVIL ACTION NO.  5:20-cv-00647

CITY OF BECKLEY, et al.,
                    Defendants.


## MEMORANDUM OPINION & ORDER

Pending before the court is Defendants' Motion to Dismiss the complaint of Plaintiff Cynthia Jafary. For the reasons explained in this memorandum opinion, the Motion is **DENIED.**

### I.    BACKGROUND

This case arises out of an incident at 56 Osprey Drive, Beckley, West Virginia. (the "Rana residence"). Plaintiff Cynthia Jafary ("Jafary") alleges that Beckley police officers intentionally made false statements to a magistrate to secure a warrant for her arrest on the charge of misdemeanor obstruction. [ECF No. 1, at ¶2].

Jafary states that she spent the first part of the evening of February 23, 2020 at her home mediating a quarrel between her niece and nephew. The niece and nephew left at around midnight. *Id.* at ¶11. About an hour later, at 1 a.m., Jafary's nephew called Jafary's husband, Dr. Hassan Jafary. *Id.* at ¶12. The nephew asked Mrs. and Dr. Jafary to come over to the nephew's home (the "Rana residence") because Dr. Jafary's brother-in-law had become ill. *Id.* Jafary states that when they arrived at the house, the niece and nephew were still arguing—this time about the cause of their father's illness. Dr. Jafary took the nephew and the nephew's mother to the

bedroom where the brother-in-law was resting. Moments later, Beckley police officers, Defendants Justin Ward and Zane England arrived. *Id.* at ¶16. Officers Ward and England had been dispatched in response to a 911 caller who reported that a domestic disturbance was in progress at the Rana residence.

From her seat in the kitchen of the Rana residence, Jafary overheard Dr. Jafary saying that an ambulance was needed and she went back to the bedroom to check on the situation. Jafary complains that as she walked down the hallway from the kitchen to the bedroom, Officer England "began violently screaming" at her nephew. *Id.* at 22. Jafary called back to the bedroom saying, "[w]hoa, you don't need to yell so loud." *Id.* Jafary complains that Officer Ward turned and yelled at her to get out, using profanity to punctuate his commands. Jafary states that she asked Officer Ward what she had done to provoke this response and that he advanced on her with his hand on his holstered gun and told her that he would arrest her for obstruction if she did not leave the room. *Id.* at ¶23. Jafary states that she calmly persisted in asking what she had done wrong while Officer Ward continued yelling and acting in a way that was "dehumanizing, unprofessional, aggressive, intimidating, and violent." *Id.* at ¶24. Jafary states that when she asked Defendant Ward for his name, he falsely gave his name as England.

The Jafarys went outside and conferred with another relative who had arrived at the house. Defendant Ward came outside and informed the people gathered there that the ambulance had arrived and that the brother-in-law was in stable condition. Jafary complains that when she continued to ask questions about Officer Ward's aggressive posture toward her, he once again raised his voice and yelled that he could

2

do whatever he needed to do to control the scene and told her she needed to leave the property. *Id.* at ¶34–35.

By this time, another Beckley police officer, Officer Sweetser, had arrived. Jafary asked Officer Sweetster if he thought Defendant Ward's conduct was proper. *Id.* at ¶36. Jafary complains that Officer Ward interrupted her by yelling that Jafary was welcome to call his supervisor, Lieutenant Redden. *Id.* Jafary did just that and filed a verbal complaint from the driveway of the Rana residence about Defendant Ward's alleged used of profanity and hostile police tactics. Jafary states that she gave the officer's name in her initial report as "England."

Later in the day on February 24, Officer Ward wrote a narrative report of the incident and attached it to a criminal complaint against Jafary for misdemeanor obstruction in violation of West Virginia Code § 61-5-17. [ECF No. 1, at ¶42]. Jafary alleges that the narrative contained "brazen lies" so that Defendant Ward could "manufacture probable cause" to justify an arrest for obstruction. *Id.* at ¶43. Jafary alleges that Ward lied about Jafary's conduct by writing that Jafary was attempting to stop Ward from carrying out his duties, by writing that Jafary had harassed and yelled at the Beckley police officers, and by writing that he had spoken to Jafary in a calm and polite manner. Jafary alleges that these falsehoods were the reason for the magistrate's finding of probable cause.

Jafary complains that Defendants intentionally waited to serve the arrest warrant until 10:45 p.m. to ensure that she would have to spend the night in jail. Throughout the month of March, Jafary's attorney sought to have the criminal complaint dismissed. It eventually was, but only after considerable pressure by her

attorney and only after she "suffered emotional and mental harm, and incurred out-of-pocket expenses related to her state court defense against the criminal charge and . . . her expungement proceeding." [ECF No. 1 at ¶77].

Jafary brings the following claims: 42 U.S.C. § 1983 claims against Defendants Ward and England for false arrest (Count I) and malicious prosecution (Count II) in violation of her Fourth Amendment rights; a 42 U.S.C. § 1983 claim against Defendants Ward and England for retaliation in violation of her First Amendment rights (Count III); a 42 U.S.C. § 1983 *Monell* claim against the City of Beckley for failure to train (Count IV); and state common law claims for malicious prosecution, intentional infliction of emotional distress, and negligent training (Counts V, VI, and VII).

## II.   LEGAL STANDARD

A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the trial court first identifies the pleadings that "because they are

4

no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must then accept the remaining factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Twombly*, 556 U.S. at 678. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

As a preliminary matter, I must determine whether my consideration of extrinsic documents attached to the motion to dismiss requires me to convert this to a motion for summary judgment under Rule 56. I find that the documents attached to Defendants' motion, copies of the criminal complaint and the arrest warrant [ECF No. 22-1, 22-2], are integral to Jafary's complaint and their authenticity is uncontroverted. Accordingly, I will decline to convert this to a motion for summary judgment. *See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009).

## III.  DISCUSSION

### A. 42 U.S.C. § 1983 claims against Officers Ward and England (Counts I-III)

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding
> for redress . . . .

42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights. It provides a "method for vindicating federal rights elsewhere conferred by those parts of the United State Constitution and federal statutes that it describes." *Souk v. City of Mt. Hope*, no 2:14-cv-26442, 2015 U.S. DIST LEXIS 130052 (S.D. W. Va. Sept. 28, 2015) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

### 1. Redundancy Argument

At the outset, Defendants state "Plaintiff's official capacity suits against the individual Defendants are duplicative of claims against the City of Beckley and therefore should be dismissed as a matter of law." [ECF No. 23 at 8] (citing *Kentucky v. Graham*, 473 U.S 159, 165–66 (1985)). In *Kentucky v. Graham*, the Supreme Court held that, under the Eleventh Amendment, the state could not be held liable for attorneys' fees under 42 U.S.C. § 1988 where the plaintiff prevailed in a suit against police officers in their individual capacities. *Graham* does not apply here.

I disagree with the notion that Jafary has made impermissible duplicative claims. Jafary makes her section 1983 claims for money damages against Defendants Ward and England in their individual capacities. She then moves for declaratory or injunctive relief against Ward and England in their official capacities. Jafary then brings a *Monell* claim for money damages against the City of Beckley and also asks for declaratory and injunctive relief against the City of Beckley that includes, "but is

not limited to, an injunction mandating proper and sufficient training of officers on the probable cause necessary to effect an arrest and on officers' duty to prevent and report false arrest when it occurs." [ECF No. 1, at 26]. Having carefully reviewed the Complaint, these claims are not duplicative of one another. Jafary is clearly seeking money damages from the individual officers in their personal capacity only. To take just one example, the claims against the City are related to her allegations of their failure to train or for execution of a policy or custom of failing to train. This relates to an entirely different theory of relief than those posed against the Officers in their individual capacities.

Defendants may be technically correct that an official capacity suit against an officer is, for all intents and purposes, a suit against his employer. But that principle is not implicated where a Plaintiff carefully distinguishes between the types of relief she seeks and in which capacities. The motion to dismiss the claims against Officers Ward and England is **DENIED**.

### 2. Probable Cause / Qualified Immunity

Defendants Ward and England move to dismiss the claims in counts I, II, and III because they "had probable cause to believe that the Plaintiff had committed the offense of obstruction as defined in W. Va. Code § 61-5-17(a)." Therefore, they argue, their actions were constitutional and confer upon them the benefit of qualified immunity with regards to Jafary's personal capacity claims. Taking the facts as Jafary has pleaded them as true—as I must when deciding a Rule 12(b)(6) motion— I find that the officers are not entitled to qualified immunity at this stage.

A qualified immunity defense can be presented in a motion testing the adequacy of the complaint, but "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Baltimore City State's Attorneys* Office, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Thus, the court must undertake a two-part inquiry: (1) determining if there was a constitutional violation; and (2) if so, whether the right violated was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the answer to either question is no, then the Defendants are entitled to qualified immunity. I will undertake this analysis for each of the constitutional violations alleged in counts I, II, and III.

### a. False arrest (Count I against Officers Ward and England in their individual capacities)

The gravamen of Jafary's constitutional allegation in Count I is set forth in paragraphs 82 and 83 of the Complaint: "Officers Ward and England violated [Jafary]'s Fourth Amendment rights by arresting her without probable cause." [ECF No 1, at ¶82]. She continues, "[t]he procedural step of obtaining a warrant from the magistrate does not shield the Officer Defendants against a Fourth Amendment claim because the issuance of the arrest warrant by the magistrate was predicated

8

solely on Officer Ward's intentionally false statements." [ECF No. 1, at ¶83]. Defendants argue that there was probable cause to make an arrest; and that they are shielded by the doctrine of qualified immunity. Whether probable cause existed is deeply related to the concept of qualified immunity. I therefore consider these arguments together.

The Fourth Amendment forbids the government from violating "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause. Thus, "[i]f a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001).

However, "[a] plaintiff's claim for false arrest ceases once plaintiff is detained pursuant to legal process, and at this point, becomes a claim of malicious prosecution." *Cruse v. Blackburn*, No. 3:17-00485, 2018 U.S. Dist. LEXIS 20853 (citing *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007)). "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process–when, for example, he is bound over by a magistrate or arraigned on charges . . . . *Wallace*, 549 U.S. at 388– 89. Because Jafary was detained pursuant to a legal process, her section 1983 claim for false arrest in Count I has merged with her claim for malicious prosecution in Count II. I therefore **DISMISS as MOOT** the claim in Count I.

9

### b. Malicious prosecution (Count II against Defendants Ward and England in their individual capacities)

In the context of a claim for malicious prosecution, the Fourth Circuit has recognized that an appropriate Section 1983 claim is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000), *cert. denied*, 531 U.S. 1130 (2001) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)); *see also Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("[A] Section 1983 malicious prosecution claim is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.").

To state a Section 1983 claim for a seizure in violation of the Fourth Amendment, the defendant must have "seized plaintiff pursuant to legal process that was not supported by probable cause and the criminal proceeding [must] have terminated in plaintiff's favor." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (citing *Brooks*, 85 F.3d at 183–85)). A decision by an independent intermediary, such as a neutral magistrate or a grand jury, as to the existence of probable cause has a significant impact on the question as to whether an officer was objectively reasonable in his belief that probable cause existed. *See Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012); *Torchinsky v. Siwinski*, 942 F.2d 257, 261–62 (4th Cir. 1991). This protective effect, however, does not shield officers who have "deliberately supplied misleading information that influenced the decision." *Durham*, 690 F.3d at 189; *see also Miller v. Prince George's County*, 475 F.3d 621, 630 (4th Cir. 2007) (When police officers arrest an individual pursuant to an arrest warrant, the officers are liable

10

under the Fourth Amendment if the officers "intentionally lie in warrant affidavits, or recklessly include or exclude material information known to them.").

"Probable cause is determined both by the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Hupp v. Cook*, 931 F.3d 307, 317 (internal citations omitted). The offense in question for which Jafary was arrested is obstruction, W. Va. Code § 61-5-17(a). The statute states that a person is guilty of obstruction when she, "by threats, menaces, acts or otherwise forcibly or illegally hinders or attempts to hinder or obstruct a law enforcement officer, probation officer, or parole officer acting in his or her official capacity." W. Va. Code § 61-5-17(a).

The Supreme Court of Appeals of West Virginia has held that a person is guilty of obstruction when she "check[s] or hamper[s] the action of the officer," does something "which hinders or prevents or tends to prevent the performance of [the officer's] legal duty," or acts in "direct or indirect opposition or resistance to the lawful discharge of [the officer's] official duty." *State v. Johnson*, 134 W. Va. 359, 59 S.E.2d 485, 487 (1950). The state must show "forcible or illegal conduct that interferes with a police officer's discharge of official duties." *State v. Davis*, 229 W. Va. 695, 735 S.E.2d 570, 573 (2012) (quoting *State v. Carney*, 222 W. Va. 152, 663 S.E.2d 606, 611 (2008)). "Because conduct can obstruct an officer if it is either forcible or illegal, a person may be guilty of obstruction 'whether or not force be actually present.'" *Hupp*, 931 F.3d at 319. (quoting *Johnson*, 59 S.E.2d at 487). But, where there is no force involved, "the resulting obstruction is itself insufficient to establish obstruction." *Hupp*, 931 F.3d at 319. Therefore, in the absence of force, only an illegal act may

11

establish the offense conduct. *Id.* Furthermore, the orderly and civil "questioning or remonstrating with an officer while he or she is performing his or her duty, does not ordinarily constitute obstruction." *State v. Srnsky*, 213 W. Va. 412, 582 S.E.2d 859, 867 (W. Va. 2003).

Here, Jafary alleges that no probable cause could have existed to charge her with obstruction and that Defendants Ward and England lied and/or made false written statements to the magistrate to secure an arrest warrant. Taking the factual allegations as true, I find that no reasonable officer could have believed that an obstruction had taken place. First, Jafary states that Officer England startled her by yelling at her nephew. [ECF No. 1 at ¶22]. She states that she calmly told Officer England that he didn't need to yell so loudly. *Id.* at ¶23. Next, she states that Officer Ward interjected by putting his hand on his sidearm and telling her to "get the f**k out" or she would be arrested. *Id.* at ¶24. But most importantly, Jafary states that she complied with this instruction by walking out of the house.

Jafary's allegations, if shown to be true, would render the officers liable under the Fourth Amendment. It is clearly established that person may not be arrested without probable cause, just as it is clearly established that an officer may not make false statements to manufacture probable cause. Qualified immunity is not appropriate at this stage of the lawsuit. Jafary's allegations also tend to show a lack of probable cause. The motion to dismiss Count II is **DENIED.**

### c. First Amendment (Count III)

In addition to their qualified immunity argument, the Defendants argue that Jafary's First Amendment claim must fail as a matter of law because she was engaged

12

in illegal obstruction and therefore her speech on the night of the incident at the Rana residence was not protected. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right. *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.").

However, "not every reaction made in response to an individual's exercise of her First Amendment right to free speech is actionable retaliation." *See DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995) ("Not every restriction is sufficient to chill the exercise of First Amendment rights, nor is every restriction actionable, even if retaliatory."). Rather, a Section 1983 retaliation plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights. *See Wicomico County*, 999 F.2d at 785 ("In order to state a retaliation claim, Appellees are required to show that WCDC's actions adversely impacted these First Amendment rights.")

A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct. *Ziegler v.*

13

*Clay Cnty. Sheriff*, 2019 U.S. Dist. LEXIS 229839 (S.D. W. Va. Sept. 16, 2019) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)).

Arresting a person for questioning an officer or calmly speaking to an officer, as Jafary has alleged is the scenario that has taken place, is retaliation. Defendants point to anodyne factual statements in Jafary's complaints found in paragraphs 22, 23, 26, and 32 as instances in which Jafary "admits" to obstruction and as examples of speech that is not protected by the First Amendment. I have carefully read those examples and find that these paragraphs statements neither amount to obstruction nor fall outside the ambit of the First Amendment's protections. They certainly do not amount to admissions of fault.

I have already described the offense of obstruction at Section III.B.2.i, *supra*. Taking the facts alleged by Jafary as true, Defendants' argument that Jafary was engaged in unprotected activity is not persuasive. It is not illegal to ask an officer for an explanation of his conduct, to ask an officer for his name, or to otherwise question the officer's course of conduct if such questioning is done in a non-menacing way and is not accompanied by a physical act. I find that Jafary has stated a plausible claim for retaliation in violation of her First Amendment rights: she has alleged that she appropriately questioned the officers, that the officers retaliated against her by making false statements to secure her arrest warrant, and that this arrest was a direct consequence of her protected activity.

Finally, Defendants are not entitled to qualified immunity in relation to Count III. Jafary has plausibly alleged a constitutional violation. Moreover, it is clearly

14

established that a police officer may not arrest a person in retaliation for speaking critically of a government official.

The motion to dismiss **Count III** is **Denied.**

### B. *Monell* claim against the City of Beckley (Count IV)

Defendants move to dismiss the failure to train claim on the grounds that the Complaint does not state with adequate specificity that the City of Beckley has a pattern or practice of failing to train its officers that probable cause is required to arrest or imprison a person. [ECF No. 23 at 8]. Jafary points to this court's decision in *Gaylord v. City of Beckley*, No. 5:18-CV-00177 (S.D. W. Va., July 25, 2018) for the proposition that the City of Beckley has a history failing to properly supervise and train officers in the determination of probable cause. Defendants argue that the use of this single example of a constitutional violation does not suffice to establish such a pattern.

A local government is immune from suit under 42 U.S.C. § 1983 for injuries caused by its employees or agents unless it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that causes the injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Smith v. Popish*, No. 5:17-cv-129, 2017 U.S. Dist. LEXIS 164208 (S.D. W. Va., Oct. 2, 2017) (quoting *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997)).

"That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will have simply shown that the *employee* acted culpably." *Brown*, 520 U.S. at 406–07. Instead, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.* Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410. "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411.

While the "deliberate indifference" standard is hard to meet, the United States Supreme Court has found that an "inadequate training" claim can be the basis for Section 1983 liability in some circumstances. *Id.* at 407. A municipal decisionmaker's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390, 397 ("It could . . . be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need.")

16

In this case, Jafary states that in at least one previous case, *Gaylord*, a plaintiff's complaint for municipal liability survived a motion to dismiss where officers allegedly used excessive force and used obstruction as a charge to later support that use of force. Jafary alleges that this, in combination with her arrest, is exemplary of the City's pattern and practice of deliberate indifference to the risks of constitutional violations by its officers. While these two incidents may ultimately not suffice to prove deliberate indifference, proof is not required at the pleading stage. I find that Jafary has plausibly alleged sufficient facts to state a Section 1983 claim against the City of Beckley and should be allowed to explore this claim in discovery. Accordingly, Defendants' motion to dismiss Count IV is **DENIED**.

### C. Additional state law claim

Plaintiff includes four West Virginia common law claims: malicious prosecution against Officers Ward and England, intentional infliction of emotional distress against Officers Ward and England, negligent training against the City of Beckley, and negligent supervision against the City of Beckley. Defendants argue that Jafary's common law malicious prosecution claim must fail as a matter of law because the officers had probable cause and they did not "procure" Jafary's arrest. They move to dismiss the failure to train and failure to supervise claims for failure to meet the pleading standards articulated in *Iqbal* and *Twombly*.

#### 1. Common law malicious prosecution against Defendants Ward and England

I have already explained that Jafary's 42 U.S.C. § 1983 malicious prosecution claim under the Fourth Amendment roughly follows the analogous common law tort of malicious prosecution and that Jafary has sufficiently stated facts to plausibly

17

state a claim for her arrest without probable cause. The question then, is whether Defendants procured her arrest.  The parties disagree about the meaning of "procure." Defendants argue that "to procure" requires not merely submitting the case to a prosecutor but that the officer defendants consulted, advised, and participated in the prosecution. [ECF No. 23, at 11]. Jafary responds that more recent case law requires only a showing of causation of prosecution.

Defendants note that the Supreme Court of Appeals of West Virginia has articulated two lines of case delineating the elements of malicious prosecution. One line uses a three-element rule: "To maintain an action for malicious prosecution, it is essential to prove: (1) that the prosecution was malicious, (2) that it was without reasonable cause, and (3) that it terminated favorably to plaintiff." *Norfolk S. Ry. Co. v. Higginbotham*, 228 W.Va. 522, 721 S.E.2d 541,545 (2011)(internal citations omitted). The second line of cases utilizes a four-pronged test: "[i]n an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he cannot recover" *Id.* (citing *Truman v. Fidelity & Casualty Co. of New York*, 146 W. Va. 707, 123 S.E.2d 59 (1961)). However, the court in *Norfolk* ruled that these two lines of cases are consistent with one another and that the element of procurement, while not explicitly stated in the first rule is nonetheless inherent to both.

18

While the West Virginia case law on the exact definition of procurement is not well developed, I find the Supreme Court of Appeals' discussion on the subject instructive:

> Other jurisdictions, however, have explored the topic in more detail. For instance, in Texas, there is no procurement when 'the decision whether to prosecute is left to the discretion of another person, a law enforcement officer or the grand jury. . . . An exception . . . occurs when a person provides information which he knows is false to another to cause a criminal prosecution. . . . We find that the meaning of procurement as determined by these other jurisdictions compliments the meaning and the spirit of our law.

*Norfolk*, 721 S.E. 2d at 548.

With those principles in mind, I find that Jafary has satisfactorily alleged the facts and elements of a common law malicious prosecution: she claims that the Defendants lied to the magistrate, that she was thereupon seized by warrant, and that the case against her was ultimately dropped. As a result of this, she claims to have suffered damages. Accordingly, the motion to dismiss Count V is **DENIED**.

### 2. Intentional infliction of emotional distress against Defendants Ward and England

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Travis v. Alcon Labs, Inc.*, 202 W.Va. 369, 504

19

S.E.2d 419, 425 (1998). The West Virginia Supreme Court has determined that for a plaintiff to demonstrate "outrageousness" she must show that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tanner v. Rite Aid of W. Va., Inc.*, 194 W. Va. 643, 461 S.E. 2d 149, 157 (1995) (quoting Restatement (Second) of Torts § 46(1) (1965)). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Travis*, 504 S.E.2d at 428.

I find that Jafary's allegations that Defendants Ward and England lied to procure her arrest without probable cause after an incident in which they used hostile and threatening language despite her orderly behavior satisfy the basic pleading standards needed to articulate this claim. The conduct may reasonably be considered outrageous. The Motion to dismiss as to Count VI is **DENIED.**

### 3. Negligent supervision and negligent training against the City of Beckley

To state a claim for negligent supervision or training, a Plaintiff must show that "[a municipal defendant] failed to properly supervise [an employee officer] and, as a result, [the employee officer] proximately caused injury to the [plaintiff]." *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 515 (S.D. W. Va. 2010) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128, 538 S.E.2d 719 (2000); *see also West Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751, 773 (2014)(finding that although negligent hiring, training and supervision claims against state agencies involve discretionary functions for immunity purposes, no such

20

limitations apply to claims against political subdivisions). In *Taylor*, the West Virginia Supreme Court "treat[ed] negligent supervision like other claims based in negligence." *Woods*, 712 F. Supp. 2d at 515.

Jafary's complaint does not contain extensive detail about the Beckley Police Department's training and supervision programs. It does allege, however, the City "has a history of negligently training its police officers on probable cause determinations" and that officers "routinely charge people with obstruction without probable cause, particularly when the officers engaged in other misconduct." [ECF No. 1, at 151]. As I stated in the discussion of Jafary's *Monell* claim against the city, Jafary need not *prove* the city's negligence at this stage. Accordingly, the Court finds that the Plaintiff has adequately alleged facts supporting a claim of negligent supervision against the City of Beckley. The motion to dismiss Counts VII and VIII is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED.** Plaintiff's claim in Count I is **DISMISSED as MOOT**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:May 5, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

21