IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CYNTHIA JAFARY
                        Plaintiff,

v.                                              CIVIL ACTION NO. 5:20-cv-00647

CITY OF BECKLEY, et al.,
                        Defendants.


MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion for Summary Judgment. [ECF No. 113]. For the reasons explained in this memorandum opinion, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

At approximately 1 a.m. on February 24, 2020, City of Beckley police officers, Defendants Justin Ward and Zane England (collectively, "Defendant officers"), responded to a dispatch for a domestic disturbance in progress at the home of Ms. Jafary's brother- and sister-in-law ("the Ranas"). The disturbance resulted from a conflict with the Ranas' daughter, Ms. Jafary's niece. [ECF No. 114, at 2]. When Defendant Ward arrived at the Rana residence, he was informed that Ms. Jafary's brother-in-law had lost consciousness and was on the floor in one of the bedrooms. *Id.* at 3. Defendant officers called for dispatch of emergency medical services to the Rana residence and tended to Ms. Jafary's brother-in-law in the bedroom while

waiting for medical services to arrive. *Id.* Defendant officers conversed with Ms. Jafary's sister-in-law and nephew about Ms. Jafary's niece. *Id.* Defendant officers admit that they used raised voices during this conversation "to gain control of the scene." *Id.*

Ms. Jafary, who was present at the Rana residence after being called there by a relative, alleges that Defendant officers were excessively yelling and using profanity. [ECF No. 118, at 2]. Ms. Jafary claims that she came to the doorway of the bedroom and objected to Defendant officers' use of language and heightened volume. *Id.* She alleges this angered Defendant officers, who then "hurled expletives," "threatened to arrest her, and demanded that she leave." *Id.* Defendant officers assert that they never engaged in any inappropriate conduct, and it was Ms. Jafary who was upset and yelling at them, distracting them from providing medical care to her family. [ECF No. 114, at 4]. Defendant Ward "repeatedly told Ms. Jafary to leave[,] and she refused the command on each such occasion and would provide some form of rebuttal," although she eventually did retreat outside of the house. *Id.* Ms. Jafary alleges that although she questioned the officers, she never yelled at or harassed them. [ECF No. 118, at 7].

Later, when EMS arrived at the Rana residence, Defendant Ward went outside to meet them, where either he or Ms. Jafary instigated another argument. *Compare id.* at 5 with [ECF No. 118, at 2]. Ms. Jafary alleges that Defendant Ward yelled, cursed, and continued to threaten to arrest her until she walked away from

the property. *Id.* Defendant officers counter that Ms. Jafary "continued to obstruct the officers and refuse[d] to calm down." [ECF No. 114, at 5]. Defendant officers do not dispute that Ms. Jafary never used threats, insults, or any measure of physical force during her conversations with them. [ECF No. 118, at 7]. She requested Defendant officers' names and badge numbers and informed them that she intended on reporting their actions. [ECF No. 114, at 5]. Ms. Jafary called the Beckley Police Department shortly after the second encounter and filed a complaint for officer misconduct. [ECF No. 118, at 2].

The police eventually left the scene without making any arrests, but thereafter Defendant officers filed a criminal complaint against Ms. Jafary, accusing her of obstructing an officer in violation of W. Va. Code § 61-5-17(a). [ECF No. 114, at 6]. In the narrative for the arrest warrant, Defendant officers stated that Ms. Jafary yelled at them, harassed them, refused instructions, tried to impede their movements, and had to be escorted away from the property. [ECF No. 118-1, at 202]. Ms. Jafary alleges that these are lies made up by Defendant officers to manufacture probable cause to arrest her on the charge of obstruction. [ECF No. 118, at 3].

Based on the narrative, a magistrate judge issued an arrest warrant for Ms. Jafary, which was served by Defendant officers around 10:30 p.m. on February 24, 2020. [ECF No. 114, at 6]. Ms. Jafary alleges that Defendant officers waited until it was late to serve the warrant to force her to spend the night in jail. [ECF No. 118,

3

at 3]. Defendant officers testified in contrast that they were expected to serve the warrants they applied for and that at the time, they only worked night shift, so they could not arrest Ms. Jafary during the day. [ECF 118-1, at 144–45].

Ms. Jafary was released from jail the next day, and the misdemeanor obstruction charge was thereafter dismissed and expunged from her record. [ECF No. 118, at 3–4]. She alleges that Defendant officers arrested her and caused her prosecution on the charge of misdemeanor obstruction while lacking probable cause to believe she committed a crime. [ECF No. 1, at ¶2]. She alleges that she incurred thousands of dollars in legal fees to defend herself, suffered damages to her reputation in the community, and suffered emotionally due to being arrested and spending a night in jail in retaliation for lawful conduct. [ECF No. 118, at 4].

Ms. Jafary brings the following claims: a 42 U.S.C. § 1983 claim against Defendants Ward and England for malicious prosecution in violation of her Fourth Amendment rights (Count II); a 42 U.S.C. § 1983 claim against Defendants Ward and England for retaliation in violation of her First Amendment rights (Count III); a 42 U.S.C. § 1983 *Monell* claim against the City of Beckley for failure to train (Count IV); and state common law claims for malicious prosecution, intentional infliction of emotional distress, and negligent training and supervision (Counts V, VI, VII, and VIII).[1] Defendants move for summary judgment on each of the remaining counts.

---

[1] I previously dismissed Ms. Jafary's 42 U.S.C. § 1983 claim for false arrest against Defendants Ward and England in their individual capacities (Count I) as moot because it merged with the malicious

## II.    LEGAL STANDARDS

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The moving party may meet its burden of showing that no genuine issue of material fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Although the court will view all underlying

---

prosecution claim in Count II. [ECF No. 77, at 9].

facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson*, 477 U.S. at 256. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Rather, the nonmoving party must satisfy her burden of proof by "set[ting] forth specific facts" that offer more than a "scintilla of evidence" in support of her position "that there is a genuine issue for trial." *Anderson,* 477 U.S. at 252, 256.

### B. Qualified Immunity

"Police officers sued in their individual capacities . . . have qualified immunity with respect to official actions taken in good faith." *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982). "Individual liability for actions in the performance of official duties arises only when an officer knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights" of the individuals affected "or if he took the action with the malicious intention to cause deprivation of constitutional rights or injury . . . ." *Id.*

In determining qualified immunity, the court must undertake a two-part inquiry: (1) determining whether the facts, viewed in the light most favorable to the plaintiff, show there was a constitutional violation; and (2) if so, whether the right

6

violated was clearly established at the time of the violation such that a reasonable person would have known their conduct was unconstitutional. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). If the answer to either question is no, then Defendants are entitled to qualified immunity. "The question of whether a right is clearly established, for qualified immunity purposes, is a question of law for the court to decide." *Hupp v. Cook*, 931 F.3d 307, 317–18 (4th Cir. 2019). On the other hand, the question of whether a reasonable officer would have known that the conduct at issue violated a clearly established right, for qualified immunity purposes, "cannot be decided on summary judgment if disputes of the historical facts exist." *Id.* at 318.

## III.   DISCUSSION

### A.  Claims Against Defendant Officers

Defendant officers move for summary judgment on each of the counts against them—section 1983 malicious prosecution (Count II), First Amendment retaliation (Count III), common law malicious prosecution (Count V), and intentional of infliction of emotional distress (Count VI). Their Motion is **DENIED.**

#### 1.  Section 1983 Fourth Amendment Malicious Prosecution (Count II)

Defendant officers move for summary judgment on Count II in two respects. First, Defendant officers argue they are entitled to summary judgment on the merits of the claim because they had probable cause to arrest Ms. Jafary for misdemeanor obstruction. Next, they argue they are entitled to summary judgment on the issue of qualified immunity. I address each argument separately, but I note

that the analyses of both the merits and the first prong of qualified immunity are necessarily related.[2]

### a. On the Merits

A claim of malicious prosecution under 42 U.S.C. § 1983 is "understood as a Fourth Amendment claim for unreasonable seizure" that incorporates elements of the analogous common law tort of malicious prosecution. *Hupp*, 931 F.3d at 323–24. To make a malicious prosecution claim under Section 1983, a plaintiff must show "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* at 324 (internal quotation marks omitted).

There is no dispute that Ms. Jafary was arrested pursuant to the warrant issued in response to Defendant officers' criminal complaint and that the case against her was ultimately dismissed. What is disputed is whether probable cause supported the Defendant officers' criminal complaint and the resulting warrant under which Ms. Jafary was arrested.

Probable cause is determined by a "totality-of-the-circumstances approach." *Hupp*, 931 F.3d at 318. The court applies an objective test to determine whether a reasonably prudent officer, with the same information available to the officer on the scene at the time, would have thought that probable cause existed for the arrest. *Id.*

---

[2] I recognize that "immunity is a threshold issue which the court addresses before considering any of the defendants' proffered substantive bases for summary judgment." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). However, because I do not grant the Defendant officers qualified immunity, and because the probable cause analysis is part and parcel to the merits of the claims, I address the substantive bases first for clarity.

"The inquiry turns on two factors: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Id.*

Here, Defendant officers contend that they had probable cause to arrest Ms. Jafary because she obstructed their investigation in violation of W. Va. Code § 61-5-17(a). The statute states that a person is guilty of obstruction when she "by threats, menaces, acts or otherwise *forcibly or illegally* hinders or attempts to hinder or obstruct a law enforcement officer . . . acting in his or her official capacity." W. Va. Code § 61-5-17(a) (emphasis added). Relying on several West Virginia decisions, the Fourth Circuit has explained that a violation of section 61-5-17(a) requires either "'forcible or illegal conduct that interferes with a police officer's discharge of official duties.'" *Hupp*, 931 F.3d at 319 (quoting *State v. Davis*, 735 S.E.2d 570, 573 (W. Va. 2012)). Lawful conduct that effects an obstruction, including questioning or challenging police officers, is not sufficient to establish the statutory offense. *Id.*; *see also State v. Carney*, 663 S.E.2d 606, 611 (W. Va. 2008) ("[L]awful speech will not support an obstruction charge.").

Defendant officers do not allege that Ms. Jafary ever used force against them. [ECF No. 114, at 17] ("[Defendant officers'] criminal complaint [] does not contain any allegation of forcible interference . . . ."). Thus, for the officers to reasonably believe they had probable cause to file a criminal complaint against Ms. Jafary for obstruction, they had to have believed that she engaged in illegal conduct. In his narrative to the magistrate judge, Defendant Ward stated that Ms. Jafary yelled at,

harassed, and defied Defendant officers, causing an obstruction under W. Va. Code § 61-5-17(a). [ECF No. 118-1, at 202]. Ms. Jafary denies ever engaging in such conduct and alleges that these are lies made up by Defendant officers. One witness from the Rana residence, repeatedly cited by Defendants, states that Ms. Jafary "[w]as very irate, yelling, cussing, asking for badge numbers." [ECF No. 113-6, at 3:19–20].

Clearly, there are many disputes of fact regarding the parties' respective conduct on the night of February 24, 2020. I find that there are no *material* disputes of fact here, however, because it is undisputed that Ms. Jafary never threatened the officers, shortly complied with their commands and, in any case, never escalated the interaction beyond a mere verbal disagreement. While Defendants argue that Ms. Jafary used "opprobrious and harassing" language and conduct against the police, they argue solely in generalities and do not even one time in their briefing reference specific language Ms. Jafary used against the Defendant officers. Meanwhile, in their depositions, multiple witnesses, *including the Defendant officers themselves*, agree that Ms. Jafary never cursed at, threatened, or forcibly prevented Defendant officers from completing their duties. Defendant Ward agreed that Ms. Jafary was not "combative" or "menacing" and did not "use profanity," "verbal[ly] abuse[]" anyone, "touch" anyone, or threaten anyone. [ECF No. 118-1, at 84–87]. Defendant England likewise testified that Ms. Jafary did not "threaten anyone," prevent anyone from moving, be "combative," "insult anyone," be "menacing," "verbally

abuse or harass anybody," or "cuss." [ECF No. 118-6, at 16–18, 22]; *see also* [ECF Nos. 118-2, at 122; 118-3, at 50; 118-4, at 22]. In sworn testimony, Defendant officers themselves agree that Ms. Jafary never engaged in illegal or forcible conduct.

Here, the undisputed, substantiated facts show that Ms. Jafary was arrested for briefly questioning Defendant officers as they discharged their duties—the record does not reflect any other actionable conduct from Ms. Jafary. Defendant officers are thus not entitled to judgment as a matter of law. Citizens have a First Amendment right to question police action—this speech is protected regardless of its alleged volume. *See Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007) ("Arresting a person solely based on speech that questions or opposes police action violates the First Amendment.") (citing *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987)).

Defendant officers further argue that because a magistrate judge made an independent finding of probable cause and issued an arrest warrant for Ms. Jafary based on their criminal complaint, her arrest for obstruction was reasonable. However, a magistrate judge's independent finding of probable cause "is but a factor in our consideration of the overall reasonableness of the officer's actions." *Hupp*, 931 F.3d at 324. Defendant officers are "not absolved from liability when the magistrate's probable-cause finding" is predicated solely on false statements, misleading information, "or where probable cause is plainly lacking." *Id.* To the

extent that Defendant officers alleged in their narrative to the arrest warrant application that Ms. Jafary forcibly or illegally obstructed their investigation, those statements were unequivocally walked back by Defendant officers in their depositions and briefing. [ECF Nos. 114, at 17; 118, at 7–8]. Although Defendant officers proceeded correctly in seeking a warrant for Ms. Jafary's arrest, they should have known that a reasonable officer in their positions would not believe that probable cause existed to arrest Ms. Jafary for obstruction. Because the record reflects that Ms. Jafary's conduct was plainly not a violation of the law, and the magistrate judge's finding of probable cause was otherwise predicated solely on false or misleading statements made by Defendant officers in their narrative, the Defendant officers are not insulated by the magistrate judge's independent finding of probable cause.

Defendant officers are thus not entitled to summary judgment. It is completely understandable that a police officer being verbally abused by a citizen will be disturbed by that conduct, and I do not sympathize with citizens who verbally abuse police officers. But absent threats, fighting words, or speech that is otherwise unprotected, "[i]n the face of verbal challenges to police action, officers . . . must respond with restraint." *City of Houston v. Hill*, 482 U.S. 451, 471 (1987). Defendant officers' Motion as to the merits of Count II is **DENIED.**

12

### b.  Qualified Immunity

As explained above, the applicability of qualified immunity is a two-part inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, show there was a constitutional violation; and (2) whether the right violated was clearly established at the time of the violation. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Defendant officers argue that their arrest of Ms. Jafary was supported by probable cause, and thus they are entitled to qualified immunity on Ms. Jafary's section 1983 claim for malicious prosecution in violation of the Fourth Amendment. [ECF No. 114, at 17]. They further assert that the magistrate judge's independent determination of probable cause insulates their actions. *Id.* However, in considering whether to grant qualified immunity "where a law enforcement officer acts pursuant to a warrant, the critical question is whether the officer could have reasonably thought there was probable cause to seek the warrant." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000).

I have already determined that Defendant officers did not have probable cause to seek a warrant for Ms. Jafary's arrest for the crime of obstruction because no reasonable officer should have believed that probable cause to seek the warrant existed based on the circumstances presented. Defendant officers violated Ms. Jafary's constitutional right to be free from an arrest unsupported by probable cause because she never engaged in illegal or forcible conduct to effect an obstruction under W. Va. Code § 61-5-17(a). As to the second prong of the qualified

13

immunity inquiry, the Fourth Circuit has held, "[i]f a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) (citation omitted). As such, the state of the law gave Defendant officers fair warning that than arrest of Ms. Jafary based on her speech would violate her First and Fourth Amendment rights. Therefore, Defendant officers are not entitled to qualified immunity on Count II.

### 2. Section 1983 First Amendment Retaliation (Count III)

Like Count II, Defendant officers move for summary judgment on Ms. Jafary's retaliation claim on both the merits and the basis of qualified immunity. First, Defendant officers argue they are entitled to summary judgment on the merits of the claim because Ms. Jafary's speech was unprotected by the First Amendment. Next, they argue they are entitled to summary judgment on the issue of qualified immunity.[3]

#### a. On the Merits

The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1949 (U.S. 2018). To prove a First Amendment retaliation claim under section 1983, a plaintiff must show: (1) that their speech was protected; (2) that the defendants' alleged retaliatory action adversely affected the plaintiff's

---

[3] *See supra* note 2.

constitutionally protected speech; and (3) that a causal relationship existed between plaintiff's speech and the defendants' retaliatory action. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).

As to the first element, whether Ms. Jafary's speech was protected, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). This is because "[t]he freedom of individuals verbally to oppose or challenge police action without risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 463. Individuals have a "First Amendment right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used." *Hupp*, 931 F.3d at 319; *see also Graham v. Gagnon*, 831 F.3d 176, 188 (4th Cir. 2016) ("Peaceful verbal criticism of an officer . . . cannot be targeted under a general obstruction of justice statute . . . without running afoul of the First Amendment.") (cleaned up).

Defendant officers argue that "the opprobrious and harassing conduct of Plaintiff was not protected speech." [ECF No. 114, at 19]. However, even "opprobrious" speech is only unprotected when there is a "likelihood that the person addressed would make an immediate violent response." *United States v. Bartow*, 997 F.3d 203, 207–08 (4th Cir. 2021) (quoting *Gooding v. Wilson*, 405 U.S. 518, 528 (1972)). As explained above, to the extent there is a factual dispute about the language used by Ms. Jafary that prompted Defendant officers' subsequent criminal

15

complaint, nothing in the record reflects that Ms. Jafary used any sort of threats, fighting words, or speech that is otherwise unprotected by the First Amendment. Defendants do not directly cite to harassing or opprobrious language used by Ms. Jafary. At most, when asked to leave by officers, Ms. Jafary briefly refused and continued her questioning of their actions. Although Defendant officers argue that Ms. Jafary's dispute with them distracted them from discharging their official duties, "[t]he Constitution does not allow ['speech that in any manner interrupts'] an officer to be made a crime." *City of Houston v. Hill*, 482 U.S. 451, 462 (1987) (internal citation omitted). Therefore, any dispute of fact is immaterial, and I find that Ms. Jafary's speech was protected.

As to the second element, a plaintiff suffers adverse effects if the defendants' allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry. . . ." *Blankenship v. Manchin*, 410 F. Supp. 2d 483, 490 (S.D. W. Va.), *aff'd* by 471 F.3d 523 (4th Cir. 2006) (quoting *Suarez*, 202 F.3d at 686). Here, Defendant officers' alleged retaliation to Ms. Jafary's speech consisted of an arrest, a night in jail, and an abbreviated criminal prosecution. [ECF No. 118, at 20]. I find this punishment likely to deter an ordinary person from exercising their right to

16

free speech and that Ms. Jafary has shown that her First Amendment rights were adversely affected by Defendant officers' retaliatory conduct.

Because Ms. Jafary has made a sufficient showing that Defendant officers violated her right to be free from retaliation in response to protected speech, Defendants officers' Motion for Summary Judgment as to Count III is **DENIED.**

### b.  Qualified Immunity

Defendant officers assert that they are entitled to qualified immunity on Ms. Jafary's section 1983 claim for First Amendment retaliation. [ECF No. 114, at 15]. As discussed above, Ms. Jafary has made a sufficient showing that her First Amendment right to be free from retaliation for protected speech was violated by Defendant officers, satisfying the first prong of the qualified immunity inquiry. As to whether the constitutional right violated was clearly established at the time of the violation, in the Fourth Circuit, "[i]t is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right." *Tobey v. Jones*, 706 F.3d 379, 391 (4th Cir. 2013) (internal citations omitted). Moreover, "[a]rresting a person solely based on speech that questions or opposes police action violates the First Amendment." *Lowe v. Spears*, 258 F. App'x 568, 570 (4th Cir. 2007) (citing *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987)). Reasonable officers in the Defendant officers' positions would have known that arresting Ms. Jafary for her speech was unconstitutional because the

precedent was clearly established at the time of the violation. Defendant officers are thus not entitled to qualified immunity on Count III.

### 3. Common Law Malicious Prosecution (Count V)

"Under West Virginia law, a plaintiff bringing a malicious prosecution claim must show '(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant[s]; (3) that it was without probable cause; and (4) that it was malicious.'" *Hupp*, 931 F.3d at 325 (quoting *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363, 368 (W. Va. 2019)). "Where a want of probable cause for the prosecution is shown by a preponderance of the evidence, malice may be inferred." *Id.* (internal citations omitted). Moreover, as discussed previously in this case, causation or procurement of prosecution may be found even where the decision to prosecute is left to the discretion of another person when defendants provide information which they know to be false to that person in order to cause the criminal prosecution. [ECF No. 77, at 19 (citing *Norfolk S. Ry. Co. v. Higginbotham*, 721 S.E.2d 541, 548 (W. Va. 2011))].

I have already explained that Ms. Jafary's section 1983 malicious prosecution claim under the Fourth Amendment incorporates elements of the analogous common law tort of malicious prosecution and that she has made a showing sufficient to establish her claim for her arrest without probable cause. *See infra*, section III.A.1.a. As to the remaining element of causation or procurement, Defendant officers argue that because the county prosecutor controlled the prosecution, there was no procurement on their part. [ECF No. 114, at 140].

18

Defendant England further argues that because the narrative for the criminal complaint was Defendant Ward's, Defendant England did not procure the prosecution. *Id.* However, Defendant Ward stated in his deposition that both he and Defendant England "wrote the narrative and criminal complaint[]" against Ms. Jafary to the magistrate judge. [ECF No. 118-1, at 116–17]. This level of involvement seems sufficient on its own to constitute procurement. *See Weigle v. Pifer*, 139 F. Supp. 3d 760, 782 (S.D. W. Va. 2015). Moreover, the narrative stated that Ms. Jafary yelled at, harassed, and impeded the movements of Defendant officers [ECF No. 118-1, at 202], which Ms. Jafary and several other fact witnesses allege are lies. [ECF Nos. 118-1, at 87; 118-2, at 122; 118-3, at 50; 118-4, at 22; 118-6, at 16–18, 22]. Because the truth of these allegations necessarily informed the basis for the magistrate judge's finding of probable cause to issue the warrant to arrest Ms. Jafary, I find that Ms. Jafary has met her burden as to this claim, overcoming Defendant officers' Motion for Summary Judgment. The Motion as to Count V is **DENIED.**

### 4.  Intentional Infliction of Emotional Distress (Count VI)

In Defendants' memorandum of law in support of their Motion for Summary Judgment, they argue only that "Plaintiff has failed to elicit sufficient evidence demonstrating how the alleged conduct of Defendants Ward and England was so outrageous as to exceed all bounds of decency." [ECF No. 114, at 15]. In West Virginia, "the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute

the intentional or reckless infliction of emotional distress." *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 404 (W. Va. 2008). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Id.*

I find that Ms. Jafary has made a sufficient showing through record evidence that Defendant officers' conduct may reasonably be regarded as extreme and outrageous. Viewing the facts and evidence in the light most favorable to Ms. Jafary, in the face of her lawful questioning of Defendant officers' actions, she was arrested without probable cause pursuant to false statements Defendant officers made charging her with misdemeanor obstruction. *See Honaker*, 184 F. Supp. 3d at 328 (finding that an officer's conduct which included filing criminal charges based on untrue characterizations of an incident could reasonably be considered outrageous). Emotional distress is a natural result of a person spending an unwarranted night in jail and facing a malicious prosecution of unjustified criminal charges. Summary judgment on this claim is not appropriate, and Defendants' Motion as to Count VI is **DENIED.**

### B. Claims Against City of Beckley

As further discussed herein, Defendants' Motion for Summary Judgment as to Plaintiff's claims against Defendant City of Beckley—a section 1983 *Monell* claim for failure to train (Count IV), common law negligent training (Count VII), and common law negligent supervision (Count VIII)—is **GRANTED.**

1.  Section 1983 *Monell* Claim for Failure to Train (Count IV)

For section 1983 liability to extend to a local government, the government's policy or custom must be the "moving force" that resulted in the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[I]nadequate training can justifiably be said to represent city policy" as the basis for section 1983 liability where "the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). This standard requires a plaintiff to show that "the need for more or different [police] training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Revene v. Charles Cty. Com'rs*, 882 F.2d 870, 874–75 (4th Cir. 1989).

Ms. Jafary alleges that Defendant City of Beckley was deliberately indifferent to possible infringements on the rights of its citizens because of its failure to sufficiently train its officers on making probable cause determinations. [ECF No. 118, at 23]. In support of her claim, Ms. Jafary alleges that the only relevant probable cause training that police officers in the City of Beckley receive is during their 16-week training at the West Virginia State Police Academy. *Id.* at 21. However, Beckley Police Department has its officers complete an additional 12-week field training program, and Ms. Jafary herself noted that the Beckley Police Department Field Training Officers Manual lists probable cause as a topic covered during officer training. *Id.*; [ECF Nos. 118-8, at 16; 118-14, at 16]. Defendant

21

England stated that the Police Academy designated two days to training officers in probable cause. [ECF No. 118-6, at 13]. Defendant Ward stated that officers are trained in proper procedure for completing applications for arrest warrants during the Beckley Police Department's supervised field training program. [ECF No. 118-1, at 164–65]. Importantly, the Beckley Police Department, in its currently effective policies and procedures, explains that officers shall only conduct arrests when based upon probable cause, defines probable cause, and explains circumstances justifying an officer's finding of probable cause. [ECF No. 118-13, 1–2].

I find that nothing in the record indicates that the City of Beckley has a policy of failing to train its police officers such that the City has been deliberately indifferent to likely potential violations of its citizens' constitutional rights. Even viewing the facts in the light most favorable to Ms. Jafary, I cannot conclude that a purported policy or custom of indifference by the City caused her injuries. Because Ms. Jafary has failed to meet her burden of establishing an essential element of her section 1983 *Monell* claim for failure to train, Defendant City of Beckley's Motion for Summary Judgment as to Count IV is **GRANTED.**

### 2.  Common Law Negligent Training and Supervision (Counts VII and VIII)

Under West Virginia law, claims for negligent training or supervision "must rest upon a showing that [the city] failed to properly supervise [its police officers] and, as a result, [its police officers] proximately caused injury to the plaintiff[]."

*Honaker v. Town of Sophia*, 184 F. Supp. 3d 319, 326 (S.D. W. Va. 2016) (quoting *Taylor v. Cabell Huntington Hosp.*, 538 S.E.2d 719, 725 (W. Va 2000)).

As to Ms. Jafary's negligent supervision claim, I find that she has failed to make a sufficient showing that any negligent supervision on the part of the City of Beckley proximately caused her injuries. While the Defendant officers admitted in their depositions that Beckley Police Department was understaffed at the time of the incident, they stated that even if there were additional supervisors on duty the night of the incident, they felt that they had the situation handled and would not have called for additional support. [ECF No. 118-1, at 83–84]. Moreover, record evidence shows that the Department's supervisors handled Ms. Jafary's complaint against its officers and laid out steps to avoid similar situations in the future. *Id.* at 216–17. Defendant officers have no complaints like Ms. Jafary's listed in either of their employee files. [ECF No. 114, at 11]. Defendant City of Beckley additionally argues that Ms. Jafary has failed to identify any evidence that it was negligent in training its officers in probable cause determinations. For the reasons stated here, in addition to those expressed above in section 3.B.1, I agree. Defendant City of Beckley's Motion for Summary Judgment as to Counts VII and VIII is **GRANTED.**

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 113] is **GRANTED IN PART** and **DENIED IN PART.** As to Plaintiff's claims against Defendant Officers Justin Ward and Zane England—section 1983 malicious

prosecution (Count II), First Amendment retaliation (Count III), common law malicious prosecution (Count V), and intentional of infliction of emotional distress (Count VI)—the motion is **DENIED.** As to Plaintiff's claims against Defendant City of Beckley— a section 1983 *Monell* claim for failure to train (Count IV), common law negligent training (Count VII), and common law negligent supervision (Count VIII)—the motion is **GRANTED.** The City of Beckley is **DISMISSED** as a Defendant from this action. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        December 28, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE